UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Hutchinson Technology Corporation,

    Plaintiff,

v.                                                                      Civ. No. 06-1703 (JNE/SRN)
                                                                      ORDER

Magnecomp Corporation and Brett Holaway,

    Defendants.

---

Ahna Thoresen, Esq., and Jesseca Grassley, Esq., Faegre & Benson LLP, appeared for Plaintiff Hutchinson Technology Corporation.

Patrick Robben, Esq., Rider Bennett LLP, appeared for Defendants Magnecomp Corporation and Brett Holaway.

---

      This is an action by Hutchinson Technology Corporation against its former employee, Brett Holaway, and his current employer, Magnecomp Corporation, for breach of contract, misappropriation of trade secrets, breach of duty of loyalty, and tortious interference with contract. The case came before the Court on July 14, 2006, pursuant to Hutchinson Technology's motion for a temporary restraining order. In light of the relief sought by Hutchinson Technology and the proceedings that have occurred before the motion hearing, the Court treats the motion as one for a preliminary injunction. *See Chicago United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 946 (7th Cir. 2006); *Nordin v. Nutri/System, Inc.*, 897 F.2d 339, 343 (8th Cir. 1990). For the reasons set forth below, the Court grants in part and denies in part the motion.

## I.    BACKGROUND

      Hutchinson Technology is a Minnesota corporation that designs and manufactures suspension assemblies for computer hard drives. Before starting to work for Hutchinson

1

Technology as a process development engineer, Holaway executed an Agreement not to Compete, not to Disclose Confidential Information and Assignment of Inventions (Agreement). In the Agreement, dated December 4, 1995, Holaway acknowledged that he was "about to be employed by Hutchinson Technology," that he "may have access to or contribute to confidential information" in connection with his employment, and that Hutchinson Technology "will not employ [him] unless [he] enter[s] into this Agreement." The Agreement contains several restrictive covenants, including a noncompetition agreement:

> I shall not, during my employment with the Company [Hutchinson Technology] and for a period of two (2) years from the date of the termination of my employment, either directly, or indirectly (as an employee, director, officer, holder of more than 1% of any class of stock of a corporation, partner, advisor or consultant of any business) engage in the design, development, manufacture, sale, distribution or promotion, to any customer which was a customer of the Company at any time during the three (3) year period prior to the termination of my employment, of any products or goods similar to those manufactured, assembled or sold by the Company at any time during such three (3) year period.

The Agreement provides that it "shall be governed by Minnesota law."

During his employment at Hutchinson Technology, Holaway worked on developing and improving the process used to manufacture suspension assemblies. On April 28, 2006, Holaway notified Hutchinson Technology of his intent to terminate his employment in two weeks. On May 1, 2006, Hutchinson Technology terminated his employment.

The next day, Holaway started to work for Magnecomp, which is a California corporation and a competitor of Hutchinson Technology, as "Manager, Process Development: Data Storage Products." Holaway describes his duties at Magnecomp as follows:

> My current position at Magnecomp involves providing basic engineering to Magnecomp's engineers who are working on implementing Magnecomp's previously-determined business methods. I do not design, develop, manufacture, sell, distribute, or promote products to customers. Instead, I supervise and provide basic-level process guidance to newly hired engineers. For example, I help those engineers who report to me understand the need for learning customer

specifications and how to translate those specifications to Magnecomp's technology.

Steve Misuta, Magnecomp's Vice President of Engineering, describes his expectations of the Manager, Process Development as:

> [M]anage engineers and technicians in the continued development of Magnecomp proprietary processes for the forming and assembly of hard drive components; develop new process equipment with a focus on using technology for improved manufacture and quality of products; and conduct testing, prototyping, process development, and for transfer to production.

Misuta asserts that Holaway is "performing engineering services to build on and improve the processes currently in use by Magnecomp." Misuta also expects that Holaway "will work on processes for products that Magnecomp could produce in the future." According to Misuta, Holaway is not "directly involved in determining the design of goods that Magnecomp sells or might sell that arguably compete with goods similar to those sold by Hutchinson."

On the day that Holaway started to work for Magnecomp, Holaway and Magnecomp brought an action in California state court against Hutchinson Technology seeking a declaration that the noncompetition provision of the Agreement is invalid and unenforceable. On May 4, 2006, Hutchinson Technology removed the action to the United States District Court for the Central District of California. Four days later, Hutchinson Technology commenced this action and sought a temporary restraining order. The Court denied the motion and stayed this litigation due to the pendency of the first-filed action in the Central District of California.

In June 2006, the Central District of California dismissed the first-filed action after applying an exception to the first-filed rule. Consequently, the Court lifted the stay. Shortly thereafter, Hutchinson Technology filed the instant motion.

## II. DISCUSSION

**A.  Preliminary injunction**

To determine whether to grant a motion for a preliminary injunction, a court must consider: (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm absent the injunction; (3) the balance between this harm and the harm experienced by other parties if the injunction issues; and (4) the public interest. *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). Injunctive relief is an extraordinary remedy, *see Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 503 (8th Cir. 1987), and the party requesting the injunction bears the "complete burden" of proving they are entitled to such relief. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987). While no one factor is determinative, likelihood of success on the merits is generally the touchstone inquiry. *Dataphase*, 640 F.2d at 113*; see also S & M Constructors, Inc. v. Foley Co.,* 959 F.2d 97, 98 (8th Cir. 1992).

For present purposes, the parties do not dispute that Minnesota law applies. The Court proceeds accordingly. *See Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 454-56 (Minn. Ct. App. 2001).

*1.  Breach of contract*

Hutchinson Technology alleges that Holaway breached the noncompetition provision of the Agreement. Noncompete agreements, though disfavored by Minnesota courts, are enforceable if they serve a legitimate interest and are no broader than necessary to protect this interest. *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 361 (Minn. 1998). To assess whether a noncompete agreement is reasonable, a court considers "the nature and character of the employment, the nature and extent of the business, the time for which the restriction is imposed,

4

the territorial extent of the covenant, and other pertinent conditions." *Dynamic Air, Inc. v. Bloch*, 502 N.W.2d 796, 799 (Minn. Ct. App. 1993). In addition, to be enforceable, a noncompete agreement must be ancillary to the initial employment agreement or, if not ancillary to the initial agreement, supported by independent consideration. *Nat'l Recruiters, Inc. v. Cashman*, 323 N.W.2d 736, 740 (Minn. 1982).

      The limited record before the Court indicates that the Agreement's noncompetition provision is likely enforceable. In executing the Agreement, Holaway acknowledged that he was about to be employed by Hutchinson Technology and that his employment depended on the Agreement's execution. Holaway worked for Hutchinson Technology for more than ten years. During his employment, he had access to and developed some of Hutchinson Technology's trade secrets. According to Hutchinson Technology's Director of Technical Development, Pat Madsen, the disk drive industry is "dominated by a relatively small number of manufacturers." Hutchinson Technology produces suspension assemblies for these manufacturers. The Agreement's noncompetition provision is limited to the two years after the termination of Holaway's employment. At this early stage of the litigation, under these circumstances, the Court concludes that the noncompetition provision is likely enforceable. *See Medtronic, Inc. v. Gibbons*, 684 F.2d 565, 569 (8th Cir. 1982); *Modern Controls, Inc. v. Andreakis*, 578 F.2d 1264, 1268 (8th Cir. 1978); *Advanced Bionics*, 630 N.W.2d at 456.

      The Court next considers whether Hutchinson Technology has demonstrated that Holaway is likely breaching the Agreement's noncompetition provision. Holaway and Magnecomp first argue that the issue of whether Holaway is breaching the noncompetition provision should not be separated from Hutchinson Technology's claim for misappropriation of trade secrets. The Court rejects their attempt to conflate the misappropriation claim and the

claim for breach of the noncompetition provision. *See Andreakis*, 578 F.2d at 1268 ("To require an employer to prove the existence of trade secrets prior to enforcement of a covenant not to compete may defeat the only purpose for which the covenant exists."); *Minn. Mining & Mfg. Co. v. Kirkevold*, 87 F.R.D. 324, 333 n.4 (D. Minn. 1980) ("[A]n employer need not divulge in precise and unmistakable terms the nature of the trade secrets or confidential information the employer seeks to protect by attempting to enforce a covenant not to compete.").

Magnecomp and Holaway next argue that Holaway is not breaching the Agreement's noncompetition provision because he is working on Magnecomp's internal processes. As set forth above, Holaway agreed for two years after the termination of his employment at Hutchinson Technology not to directly or indirectly "engage in the design, development, manufacture, sale, distribution or promotion, to any customer which was a customer of [Hutchinson Technology] . . . of any products or goods similar to those manufactured, assembled or sold" by Hutchinson Technology during the three years before his termination. The Court is not persuaded that the distinction drawn by Magnecomp and Holaway brings Holaway's duties at Magnecomp outside the scope of the Agreement's noncompetition provision. The affidavits of Misuta and Holaway reveal that Holaway is working on processes that Magnecomp uses to manufacture its components for hard drives, including suspension assemblies. Neither Holaway nor Magnecomp disputes the assertion in Madsen's affidavit that "Magnecomp is a direct competitor of [Hutchinson Technology]." According to Madsen, the industry is "dominated by a relatively small number of manufacturers" for which Hutchinson Technology makes suspension assemblies. Although Misuta asserts that "meaningful differences exist" between Hutchinson Technology's and Magnecomp's businesses, he acknowledges that they "overlap somewhat." In short, the limited record indicates that Holaway is likely engaging directly or indirectly in the

6

design, development, or manufacture of goods or products similar to those made by Hutchinson Technology during the three years before his termination.  Accordingly, the Court concludes at this early stage of the litigation that Hutchinson Technology has demonstrated a likelihood of success on the merits of its claim for breach of contract.

Hutchinson Technology next argues that it faces a threat of irreparable harm from Holaway's alleged breach of the Agreement's noncompetition provision.  "In a proper case irreparable harm to the employer may be inferred if it can be shown that the employee breached an enforceable restrictive covenant."  *Edin v. Josten's, Inc.*, 343 N.W.2d 691, 694 (Minn. Ct. App. 1984) (citing *Thermorama, Inc. v. Buckwold*, 125 N.W.2d 844 (Minn. 1964)).  The limited record reveals that Holaway retains knowledge of Hutchinson Technology's trade secrets or confidential information, that Hutchinson Technology and Magnecomp are competitors, and that Holaway is working, directly or indirectly, at Magnecomp on products similar to those on which he worked at Hutchinson Technology.  Under these circumstances, the Court concludes that Hutchinson Technology faces a threat of irreparable harm absent injunctive relief from Holaway's alleged breach of the Agreement's noncompetition provision.  *See Andreakis*, 578 F.2d at 1270; *Menter Co. v. Brock*, 180 N.W. 553, 554-55 (Minn. 1920).

Against the threat of irreparable harm faced by Hutchinson Technology, the Court must balance the harm Holaway will experience if enjoined.  An injunction that prevents Holaway from working as Magnecomp's "Manager, Process Development:  Data Storage Products" will deprive Holaway of a position with his chosen employer.  However, the injunction will not deprive Holaway of his ability to earn a living.  According to Misuta, "[t]he disk drive industry experiences a regular amount of mobility of engineers throughout the industry."  Consequently, it appears that Holaway could readily seek employment in the industry related to products other

than suspension assemblies. Thus, while the Court does not belittle the harm faced by Holaway, the Court concludes that the threat of irreparable harm to Hutchinson Technology outweighs the harm he faces. *See Advanced Bionics*, 630 N.W.2d at 453.

Finally, the Court considers the public interest. Again, although Minnesota disfavors noncompete agreements, they are enforceable if they serve a legitimate interest and are no broader than necessary to protect the interest. *Kallok*, 573 N.W.2d at 361. Here, the Agreement's noncompetition provision is likely enforceable, and Holaway is likely breaching it by working as Magnecomp's "Manager, Process Development: Data Storage Products." Accordingly, the Court concludes that this factor favors Hutchinson Technology.

In short, the Court finds that the Agreement's noncompetition provision is likely enforceable, that Holaway is likely breaching it, that Hutchinson Technology faces a threat of irreparable harm absent injunctive relief, that the balance of harms favors Hutchinson Technology, and that injunctive relief serves the public interest. The Court therefore grants Hutchinson Technology's motion insofar as it is based on the claim for breach of contract. Holaway shall not directly or indirectly render services to Magnecomp as "Manager, Process Development: Data Storage Products."

    *2.    Misappropriation of trade secrets*

The Minnesota Uniform Trade Secret Act (MUTSA) protects certain information by providing for an action for trade secret misappropriation. *Electro-Craft Corp. v. Controlled Motion, Inc.*, 332 N.W.2d 890, 897 (Minn. 1983). Under the MUTSA, a plaintiff must establish the existence of a trade secret and actual or threatened misappropriation of that trade secret. Minn. Stat. § 325C.01 (2004). A trade secret is information that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable

by proper means by, other persons who can obtain economic value from its disclosure or use," and "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Id.*, subd. 5. In other words, for information to qualify as a trade secret: (1) the information must be neither generally known nor readily ascertainable; (2) the information must derive independent economic value from secrecy; and (3) the plaintiff must make reasonable efforts to maintain secrecy. *Electro-Craft*, 332 N.W.2d at 899.

To succeed on a trade secret misappropriation claim, a plaintiff must first define its alleged trade secrets with sufficient specificity. *Electro-Craft*, 332 N.W.2d at 898 (explaining that plaintiff's lack of specificity was fatal to its trade secret claim); *NewLeaf Designs, LLC v. BestBins Corp.*, 168 F. Supp. 2d 1039, 1046 (D. Minn. 2001) (noting that plaintiff had failed to show likelihood of success on the merits "primarily because it had not been able to articulate with specificity" the allegedly misappropriated trade secrets). In this case, Hutchinson Technology asserts that a design, a few processes, and a few machines constitute trade secrets that Holaway and Magnecomp misappropriated. Hutchinson Technology does little more than name the design, processes, and machines. In the absence of specific information about the alleged trade secrets, the Court cannot ascertain whether the alleged trade secrets satisfy MUTSA's requirements. Accordingly, the Court concludes that Hutchinson Technology has not demonstrated a likelihood of success on the merits of its misappropriation claim. The Court therefore denies Hutchinson Technology's motion as it relates to the misappropriation claim. *See Int'l Bus. Mach. Corp. v. Seagate Tech., Inc.*, 941 F. Supp. 98, 100 (D. Minn. 1992) (stating that preliminary injunction should not issue where plaintiff fails to identify specific trade secrets).

3. *Breach of duty of loyalty*

Under Minnesota law, "an employee owes his employer a duty of loyalty which prohibits him from soliciting the employer's customers for himself, or from otherwise competing with his employer, while still employed." *Eaton Corp. v. Giere*, 971 F.2d 136, 141 (8th Cir. 1992) (citing *Rehab. Specialists, Inc. v. Koering*, 404 N.W.2d 301, 304 (Minn. Ct. App. 1987)). Nevertheless, an employee who wishes to pursue new employment or start a business should not be unduly hindered from doing so. *Rehab. Specialists*, 404 N.W.2d at 304. Thus, an employee has a right, while still employed, to prepare to compete with his employer. *Id.*

In Count Three of is Complaint, Hutchinson Technology alleges: "As a [Hutchinson Technology] employee, Holaway had fiduciary duties of loyalty to [Hutchinson Technology] which required that he act solely in the best interests of [Hutchinson Technology] and not in a way that would be detrimental to [Hutchinson Technology]." Hutchinson Technology also alleges that Holaway breached these duties by engaging in "wrongful competitive activities." The limited record before the Court reveals that Holaway gave Hutchinson Technology his two-week notice, that Hutchinson Technology decided to terminate his employment before the end of the two weeks, and that Holaway then started to work for Magnecomp. On this record, the Court concludes that Hutchinson Technology has not demonstrated a likelihood of success on the merits of its claim for breach of the duty of loyalty. Nor is there any evidence of a threat of irreparable harm from Holaway's alleged breach. Accordingly, the Court denies Hutchinson Technology's motion insofar as Hutchinson Technology seeks injunctive relief based on Holaway's alleged breach of his duty of loyalty.

*4.     Tortious interference with contract*

To prevail on a claim of tortious interference with contract, a plaintiff must show the existence of a contract, the alleged wrongdoer's knowledge of the contract, and an intentional procurement of its breach, without justification, that damages the plaintiff. *Kallok*, 573 N.W.2d at 362. The defendant bears the burden of proving justification. *Id.* The limited record before the Court indicates that Hutchinson Technology will likely prevail on its claim for tortious interference with contract. First, Holaway executed the Agreement, which contains a noncompetition provision. Next, Magnecomp knew of the Agreement's noncompetition provision. Magnecomp brought a declaratory judgment action the day after Hutchinson Technology terminated Holaway. In that action, Magnecomp sought a declaration that the Agreement's noncompetition provision is invalid and unenforceable. Third, Magnecomp hired Holaway to work on the processes used to manufacture its hard drive components. As set forth above, by performing these duties, Holaway is likely breaching the Agreement's noncompetition provision. Fourth, there appears to be no justification for the alleged procurement of the breach. *Cf. Advanced Bionics*, 630 N.W.2d at 454. Finally, Hutchinson Technology has been damaged by Magnecomp's alleged tortious conduct. As set forth above, Holaway's employment as Magnecomp's "Manager, Process Development: Data Storage Products" threatens Hutchinson Technology with irreparable harm. Accordingly, the Court concludes that Hutchinson Technology is likely to succeed on the merits of its claim for tortious interference with contract and that the tortious interference threatens Hutchinson Technology with irreparable harm.

Against the irreparable harm faced by Hutchinson Technology, the Court balances the harm of injunctive relief to Magnecomp. An injunction will deprive Magnecomp of the services of Holaway. However, Misuta's acknowledgement of the "regular amount of mobility of

engineers throughout the industry" indicates that Magnecomp could readily secure the services of a competent replacement. The Court concludes that the threatened harm to Hutchinson Technology outweighs the harm to Magnecomp.

Finally, the Court considers the public interest. In this case, Magnecomp likely procured Holaway's breach of the Agreement's noncompetition provision. Accordingly, the Court concludes that the public interest favors an injunction against Magnecomp. *See Kallok*, 573 N.W.2d at 361 (stating that injunctive relief protects employer against loss of confidential proprietary information from tortious hiring of its employees).

In short, the Court finds that Hutchinson Technology is likely to succeed on the merits of its claim for tortious interference with contract, that Hutchinson Technology faces a threat of irreparable harm, that the balance of harms favors Hutchinson Technology, and that injunctive relief serves the public interest. The Court therefore grants Hutchinson Technology's motion insofar as it is based on the claim for tortious interference with contract. Magnecomp shall not accept directly or indirectly Holaway's services as "Manager, Process Development: Data Storage Products."

**B.    Discovery**

One day before the hearing on its motion for injunctive relief, Hutchinson Technology moved for leave to conduct expedited discovery. At the motion hearing, Magnecomp and Holaway represented that they would like to conduct expedited discovery if the Court granted injunctive relief. Having concluded that injunctive relief is appropriate, the Court anticipates that the parties will agree to conduct some discovery that may render moot at least a portion of Hutchinson Technology's motion for leave to conduct expedited discovery.

**C.     Bond**

Given that the parties will likely move to continue or dissolve the injunction after conducting expedited discovery, the Court will limit the duration of the injunction to three months.  *Cf. Rathmann Group v. Tanenbaum*, 889 F.2d 787, 790 (8th Cir. 1989) ("An order that grants the plaintiff all the relief it ultimately may be entitled to and that makes no provision for further hearings is a permanent injunction.").  Given this limitation, Hutchinson Technology shall post a bond in the amount of $30,000.  *See* Fed. R. Civ. P. 65(c).  If the Court continues the injunction, the Court will consider whether to require Hutchinson Technology to post an additional bond.  *See Rathmann Group*, 889 F.2d at 789.

### III.     CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Hutchinson Technology's motion for a preliminary injunction [Docket No. 16] is GRANTED IN PART and DENIED IN PART.

2. Holaway shall not directly or indirectly render services to Magnecomp as "Manager, Process Development:  Data Storage Products."

3. Magnecomp shall not accept directly or indirectly Holaway's services as "Manager, Process Development:  Data Storage Products."

4. This Order shall become effective upon the posting of a bond by Hutchinson Technology in the amount of $30,000.

5. This Order shall expire on October 17, 2006, unless the Court orders otherwise.

Dated:  July 17, 2006

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge

13